IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARL THOMAS HENDERSON, JR.,

    Petitioner,                             No. CIV S-05-1667 MCE CHS P

    vs.

TOM L. CAREY,

    Respondent.                   <u>FINDINGS AND RECOMMENDATIONS</u>

                            /

## I. INTRODUCTION

Petitioner Carl Thomas Henderson is a state prisoner proceeding pro se with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254. Petitioner is currently serving an indeterminate sentence of twenty seven years to life following his conviction in Los Angeles County for first degree murder with use of a firearm. The pending petition challenges the execution of that sentence, and specifically, a November 3, 2004 decision of the state parole authority that petitioner was not suitable to be released on parole.[1]

---

[1] In another habeas corpus petition Henderson presented to this court, case number S-08-3028 MCE CHS P, relief was denied on January 14, 2010, with no appeal. Although that petition related to a parole hearing subsequent to the present case, it was referred to the undersigned for recommendation on October 9, 2009, whereas the current case was referred on October 8, 2010, after resolution of the prior case.

1

## II.  BACKGROUND

On August 25, 1981, petitioner was involved in a gang confrontation between members of the Lime Hood Piru gang and members of Santana Crips at Oak Park in Compton, California.  According to petitioner, he was not a member of any gang, but was around the Pirus often because of this cousin.  Petitioner spent the day drinking in front of his aunt's apartment complex.  A neighbor gave him a shotgun in the late afternoon.  That night, the group entered a van to find the Crips.  Witnesses saw petitioner and his crime partner fire their weapons at the 17 year old victim, Kennedy Marsalis Johnson.  The victim received multiple gunshot pellet injuries to his head, neck, chest, abdomen and extremities and was pronounced dead shortly after the shooting.  Later that night, police apprehended the van and its occupants; petitioner was among them and was arrested at that time.

According to petitioner's version of the offense, he did not shoot the victim and was not present when it occurred.  Petitioner admits that someone had handed him a shotgun earlier that evening outside his aunt's house, as witnesses testified.  Petitioner maintains, however, that he took the shotgun into the house.  Petitioner claims he was in the bathroom when he heard the gunshots; he then went outside, saw his cousin and friends driving away, and went with them in the van because he was in fear and did not want to remain in the vicinity.  Petitioner claims he did not know that someone had been shot until he was arrested.

At trial, a jury found petitioner guilty of first degree murder with use of a firearm.  He was sentenced to an indeterminate term of twenty seven years to life in state prison.  His minimum eligible parole date passed in November of 1999.

On November 3, 2004, a panel of the Board of Prison Terms ("Board") conducted a second subsequent (third overall) hearing to determine petitioner's suitability for parole.  After considering various positive and negative suitability factors, the panel concluded that petitioner would pose an unreasonable risk of danger to society if released, and thus that he was not suitable for parole.

Petitioner sought habeas corpus relief in the Los Angeles County Superior Court. The petition was denied for failure to state a prima facie claim for relief. The same petition presented to the California Court of Appeal, Second District, was likewise denied, and the California Supreme Court denied review.

## III.  CLAIMS PRESENTED

The pending federal petition presents three claims for relief, as follow, verbatim. For purposes of this opinion, petitioner's second and third claims will be discussed together as a single claim.

> The Board of Prison Terms' finding of unsuitability and denial of parole was unsupported by any evidence in the record in violation of petitioner's due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.
>
> Petitioner's procedural due process rights were violated during the hearing by the introduction of and reliance on evidence not made available to him before the hearing as required under state law.
>
> The Board of Prison Terms violated petitioner's due process rights by promulgating and applying regulations that are inconsistent with the governing statutes concerning parole determinations.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

/////

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## V.  DISCUSSION

### A.  Federal Due Process and the "Some Evidence" Standard

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, in and of itself, create for prisoners a protected liberty interest in receipt of a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  If a state's statutory parole scheme uses mandatory language, however, it creates a presumption that parole will be granted, thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (citing *Greenholtz v.*

4

1  *Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).  California's statutory scheme for
2  determining parole for life-sentenced prisoners provides, generally, that parole *shall* be granted
3  "unless consideration of the public safety requires a more lengthy period of incarceration."  Cal.
4  Penal Code §3041 (emphasis added).  This statute gives California state prisoners whose
5  sentences carry the possibility of parole a clearly established, constitutionally protected liberty
6  interest in receipt of a parole release date.  *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007)
7  (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*,
8  334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; *Allen*, 482 U.S. at 377-78
9  (*quoting Greenholtz*, 442 U.S. at 12)).

10         The full panoply of rights afforded a defendant in a criminal proceeding is not
11 constitutionally mandated in the context of a parole proceeding.  *See Pedro v. Or. Parole Bd.*,
12 825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's
13 procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a
14 decision informing him of the reasons he did not qualify for parole.  *Greenholtz*, 442 U.S. at 16.

15         Additionally, as a matter of California state law, denial of parole to state inmates
16 must be supported by at least "some evidence" demonstrating future dangerousness.  *Hayward v.*
17 *Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th
18 616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241
19 (2008)).  California's "some evidence" requirement is a component of the liberty interest created
20 by the state's parole system."  *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010).  The federal
21 Due Process Clause requires that California comply with its own "some evidence" requirement.
22 *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam).  Accordingly, the United
23 States Court of Appeals for the Ninth Circuit has held that a reviewing court such as this one
24 must "decide whether the California judicial decision approving the... decision rejecting parole
25 was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based
26 on an unreasonable determination of the facts in light of the evidence.'"  *Hayward*, 603 F.3d at

562-63 9 (citing 28 U.S.C. §2254(d)).  This analysis is framed by the state's statutes and regulations governing parole suitability determinations for its prisoners.  *See Irons*, 505 F.3d at 851.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers.  The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b).  The regulation also sets forth specific circumstances which tend to show unsuitability or suitability for parole:

> (c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner....
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable social history.  The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in

serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

15 Cal. Code Regs. § 2402(c)-(d). The foregoing factors are general guidelines, and the Board must consider all relevant information. *In re Aguilar*, 168 Cal.App.4th 1479, 1487 (2nd Dist. 2008); *see also* 15 Cal. Code Regs. §2402(b) ("The fundamental consideration is public safety.").

/////

  Since the overriding concern is public safety, the proper focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the applicable standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th at 1254. In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

  In this case, the presiding panel concluded that petitioner was not suitable for parole and that he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The panel explained their decision as follows:

> This offense was carried out in actually a gang mentality of warfare between two different gangs. Multiple parties were involved and as a result of the encounter, one person was killed. And the offense was carried out in I would say a calculated manner in that guns were involved. And the parties that were involved in this did come from another neighborhood into the area. And the offense was carried out in a manner that showed a callous disregard for the consequences of what would happen in a gang shooting and with the thought that with guns and ammunition, somebody was going to lose their life. So the motive for the crime was very trivial if you look at gang involvement in relation to the offense; that somebody had to lose their life over this... The prisoner has a minimal previous criminal record. Picked up for burglary as a juvenile. Released to your parents. And then as an adult, you had a drunk driving and you received two years summary probation and ten days in jail. And then in '81, you were drunk in public. But there were no actions taken from that one. So your social history actually growing up, you had a pretty stable social history. Going up to school, went to college. Went into the Military for two years and probably the most significant thing in your social history would have been your drinking; alcohol began at the age of 17 and was a factor in the events that occurred that night as you had been out drinking. So your minimal – your criminal history was minimal. The Panel doesn't feel that you've sufficiently participated in beneficial self-help programs. You've done a whole lot in this last year to gain some self-help. And I think that that is really admirable, but I think you listened to what the last Panel had to say about getting involved in self-help. Prior to that, you'd only had a couple of classes. You have been involved in NA and AA since 1996. The Panel recognizes that you have no disciplinary write-ups since 1988. Your psychiatric report that was prepared on

>August 18th of '04, by Doctor Davis is a good report. Your parole plans appear to be very good. The Panel notes that 3042 notices indicate an opposition to a finding of parole suitability. Specifically that the District Attorney of LA County and the Los Angeles County Sheriff's Office who wrote a letter in opposition. We find that the gains are recent regarding self-help and you need to demonstrate an ability to maintain these for an extended period of time. You really need to be commended for you[r] excellent work record. You have been involved in AA and NA. You have 12 classes in the Emergency Management Institute. You did have Rational Behavior back in 1988, Decision Making and Meditation in 1990. You do have your certifications where you're certified washroom, certified laundry linen manager and you're certified laundry operator [sic]. That you have over 10,000 hours in that. You've been assigned to PIA laundry, furniture shop, kitchen, textiles, porter, room (indiscernible), lead man in PTA, sewing machine operator, diet kitchen and dining hall. And as was mentioned before, you are a high school graduate and had some college and two years of Military in the Navy prior to coming into prison. However, these positive aspects do not outweigh the factors of unsuitability... We had a lot of discussion. I feel that you are on the brink of being able to get out of prison. And it's unfortunate that you didn't participate in more self-help along the way. But the other thing that really causes concern are the facts that are laid out. And when you go back into and do a C-File review and go back in and read the sentencing transcript, which really does – somebody places you at the scene and shooting [sic]. And that's why I asked you if alcohol impaired your memory. The letter from the Sheriff's Department also recognizes that you many not have been the shooter that took the life, but that you were there. And so that's the area that we had problems with... And somebody, for you to have been convicted of this, somebody has placed you at the scene with the shotgun... and sees you firing that shotgun, which is different from the testimony that you give here today [sic].

(Subsequent Parole Consideration Hearing, State of California, Board of Prison Terms, November 3, 2004 ("Transcript") at 58-62.)

Thus, in finding petitioner unsuitable for parole, the panel appeared to rely on the following factors and circumstances: (1) the aggravated nature and gravity of the commitment offense; (2) a finding that petitioner had not sufficiently participated in self-help programming during incarceration; and (3) concerns raised by the fact that petitioner's version of the offense contradicts the official record.

/////

Under some circumstances, a prisoner's commitment offense can by itself constitute a valid basis for denying parole. *In re Rosenkrantz*, 29 Cal.4th at 682; *see also In re Dannenberg*, 34 Cal.4th 1061, 1094-95 (2005). In order for the circumstances of a commitment offense to support the denial of parole, there must be "something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state," that indicates "the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense *remain probative* to the statutory determination" of the prisoner's current or future dangerousness. *See Cooke*, 606 F.3d at 1216 (emphasis added) (quoting *In re Lawrence*, 44 Cal. 4th 3d at 1214). The California Supreme Court has explained "it is not the circumstance that the crime is particularly egregious that makes a prisoner unsuitable for parole- it is the implication concerning future dangerousness that derives from the prisoner having committed that crime." *In re Lawrence*, 44 Cal.4th at 1207.

In other words, California law authorizes the Board to consider the circumstances of the commitment offense, but only insofar as those circumstances relate to the inmate's current dangerousness. *In re Lawrence*, 44 Cal.4th at 1214. "In some cases, such as those in which the inmate has failed to make efforts toward rehabilitation, has continued to engage in criminal conduct postincarceration, or has shown a lack of insight or remorse, the aggravated circumstances of the commitment offense may well continue to provide 'some evidence' of current dangerousness even decades after commission of the offense." *Id*. at 1228.

The applicable state regulations specify that factors relating to a commitment offense tend to show unsuitability for parole where (A) multiple victims were attacked, injured or killed; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; or (E) the motive for the crime is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. §2402 (c)(1)(A)-(E).

In this case, the Board appeared to find two of the above factors: that the offense was carried out in a dispassionate and calculated manner, and that the motive for the crime was very trivial in relation to the offense. The Board's findings in this regard are supported in the record. It need not be decided whether these circumstances would, on their own, be sufficient to support a finding of unsuitability. This is not a case in which the Board relied solely on petitioner's commitment offense to support the denial of parole.

The Board additionally cited petitioner's failure to "sufficiently participate[ ] in beneficial self-help programs." Aside from AA participation, petitioner's record reflects a lack of self-help programming besides a Rational Behavior class and a Decision Making and Meditation class, both taken in the 1988 or 1989. Petitioner's most recent psychological report that was available to the Board indicated that petitioner did report having difficulty with stress as a result of incarceration, his lifer status, and estrangement from his family. It was reasonable for the Board to conclude that petitioner's failure to avail himself of any available self-help programming to deal with these and other issues prior to release weighed negatively in his parole suitability determination. There is some evidence that petitioner remained unsuitable for parole at the time of his 2004 suitability hearing, due to his extremely sparse record of self-help therapy considered in conjunction with the aggravated offense for which he was incarcerated.

As a third factor weighing against petitioner's release, the Board cited the inconsistencies between petitioner's version of his commitment offense and the official record. In particular, petitioner maintains that he did not shoot the victim and was not present when the shooting took place, despite eyewitness testimony placing him at the scene as one of the shooters. California law makes clear that petitioner cannot be required to admit guilt in order to be found suitable for parole. Cal. Penal Code §5011(b); 15 Cal. Code Regs. §2236. At the same time, the Board must consider petitioner's "past or present attitude toward the crime." 15 Cal. Code Regs. §2402(b). In any event, it need not be decided whether the inconsistencies between petitioner's version of the commitment offense and the official record constitute some evidence of

11

unsuitability for parole in this case, since it has already been determined that the some evidence standard has been met.

The record contains with respect to an assessment of petitioner's current dangerousness many positive factors, however, this court is precluded from re-weighing those positive factors against the negative factors discussed herein. Due process requires only that the Board's decision be supported by some evidence in the record. The circumstances of petitioner's commitment offense, coupled with his lack of participation in self-help programming other than AA provide the required modicum of evidence to support the Board's denial of parole. Petitioner is not entitled to relief for his claim that the Board's denial of parole violated his right to due process of law because it was unsupported by some evidence in the record.

B.     State Law Claims

Petitioner claims that his procedural due process rights were violated by the Board's introduction of and reliance on evidence that was not made available to him prior to the hearing, as required under state law. Petitioner further claims that the state parole authority has violated his due process rights by promulgating and applying regulations that are inconsistent with the state's governing statutes concerning parole determinations.

As already set forth, however, the full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro*, 825 F.2d at 1398-99. Petitioner does not dispute that he was afforded an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole in connection with the 2004 parole suitability hearing. *See Greenholtz*, 442 U.S. at 16. Despite citation to the federal due process clause, petitioner's second and third grounds for relief both challenge the Board's decision on state law grounds that are not cognizable in this federal habeas corpus petition. *See Estelle*, 502 U.S. at 67-68. Moreover, a state law claim is not transformed into a federal claim merely by citation to the federal due process clause. *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (holding that the federal due process clause does not repackage a state law error into a

1  federal question). Petitioner is not entitled to relief for his claims that the hearing provided by the
2  Board did not comport with state law.

## VI.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 15, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE